IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TINA L. H.,[1]                                              Case No. 6:20-cv-00228-JR

       Plaintiff,                                          OPINION AND ORDER

       v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

       Defendant.

RUSSO, Magistrate Judge:

      Plaintiff Tina H. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title XVI Social Security Income under the Social Security Act. All parties have consented to allow a Magistrate Judge enter final orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed, and this case is remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Page 1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND

Born in May 1978, plaintiff alleges disability beginning January 1, 2012, due to depression, anxiety, post-traumatic stress disorder ("PTSD"), and problems with her right foot. Tr. 174, 219. Her application was denied initially and upon reconsideration. Tr. 106-13. On January 14, 2019, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert. Tr. 32-68. On February 15, 2019, the ALJ issued a decision finding plaintiff not disabled. Tr. 18-27. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff had not engaged in substantial gainful activity "since March 17, 2017, the application date." Tr. 20. At step two, the ALJ determined the following impairments were medically determinable and severe: "right foot malformation; Achilles tendonitis; [PTSD]; anxiety; and depression." Id. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 20-21.

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform light work except she can: "occasionally operate foot controls"; "understand, remember, and carry out no more than simple, routine tasks involving no more than occasional contact with co-workers and supervisors"; and "must avoid contact with the general public." Tr. 22.

At step four, the ALJ determined plaintiff could perform past relevant work as a hotel housekeeper. Tr. 25. Alternatively, at step five, the ALJ concluded there were a significant number

of jobs in the national economy plaintiff could perform despite her impairments, such as bench assembler, garment sorter, and food sorter. Tr. 26.

## DISCUSSION

Plaintiff premises this appeal exclusively on her mental impairments, arguing that the ALJ erred by: (1) discrediting her subjective symptom statements; (2) failing to adequately weigh the third-party statements of her long-time friend, Ronald M.; and (3) rejecting the medical opinion of Teresa Dobles, Psy.D. Pl.'s Opening Br. 3-4 (doc. 18).

### I.     Plaintiff's Testimony

Plaintiff asserts the ALJ erred by discrediting her subjective symptom testimony concerning the extent of her mental impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, available at 2016 WL

1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the hearing, plaintiff testified that she is unable to work due to a combination of her physical and mental impairments. She reported that she obtained her GED in 2013 and thereafter attended community college part-time "for almost five years," but did not obtain enough credits to graduate with a human services degree. Tr. 56, 58. Plaintiff indicated that, in July 2018, she enrolled in an approximately two-year beauty school program which was "six hours a day," but left in November 2018 after experiencing "real extreme" depression following a pregnancy loss. Tr. 46-49, 54. She testified further that she intends to try to return to the program "at the end of January" once she was "stabilized on medication" (plaintiff was currently obtaining counseling but taking a break from medications due to side-effects and her fear of starting a new drug). Tr. 46-52.

In terms of daily activities, plaintiff stated that, before re-enrolling in school, she "would do normal errand running . . . grocery store, doctors' appointments," taking her 13 year-old daughter to and from school, etc. Tr. 38, 52-54. However, plaintiff had lost her car "fairly recently," so her daughter's grandmothers had been assisting with transportation and school activities, especially since plaintiff had not "been wanting to go and socialize with people." Id. Plaintiff explained that she had "really been terribly afflicted by the [pregnancy] loss," such that she had been staying home more, "sometimes . . . spend[ing] days in bed." Tr. 54. While she is "not a real people person," plaintiff was still able to go for walks, clean her home, and shop at the grocery store as necessary to feed her daughter. Tr. 54-55.

After summarizing her hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 23.

Specifically, the ALJ found that plaintiff's physical symptoms were not as severe as alleged due to the fact that plaintiff "continued to exercise 2-3times a week while maintaining a 'moderate' activity level" and "delayed the surgical procedural [on her right foot, which was ultimately successful,] so she could complete her classwork at a local community college." Tr. 23-24. The ALJ then identified plaintiff's "primary obstacle to regular employment" as her "mental symptoms associated with depression, anxiety, and PTSD." Tr. 24. Yet the ALJ did not assess or otherwise discuss plaintiff's testimony concerning these symptoms. Rather, the sole focus of the ALJ's subsequent discussion is confined to evaluating the medical opinion evidence. Tr. 24-25.

Even reading the ALJ's decision liberally and drawing all "specific and legitimate inferences [there]from," the Court finds the ALJ erred. Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989). In particular, the ALJ failed to specify "which part of Plaintiff's testimony was actually contradicted by which medical opinion." See William P. v. Comm'r Soc. Sec. Admin., Case No. 6:18-cv-00444-HZ, Opinion & Order 14-15 (Nov. 1, 2019) (explaining that the ALJ "violates clearly established law" by doing nothing more than summarizing the claimant's hearing statements and citing to medical evidence) (collecting cases).

Moreover, "whether the alleged symptoms are consistent with the medical evidence" is a relevant consideration, but "an ALJ cannot reject a claimant's subjective pain or symptom testimony simply because the alleged severity of the pain or symptoms is not supported by

Page 5 – OPINION AND ORDER

objective medical evidence." Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007) (citations omitted). Stated differently, the ALJ may not rely exclusively on the lack of corroborating medical evidence to discount a claimant's testimony.

This is especially true where, as here, the record intimates a worsening of symptoms and cessation of alcohol and/or drugs unacknowledged by the ALJ.[2] See Cowie v. Comm'r Soc. Sec., 2017 WL 5894190, *3-5 (D. Or. Nov. 29, 2017) (reversing the ALJ's decision where the ALJ failed to address evidence showing that the claimant's allegedly disabling symptoms worsened even after she reduced her alcohol consumption); see also Lee v. Colvin, 2016 WL 3647974, *2-5 (D. Or. July 7, 2016) (reversing the ALJ's decision where the record demonstrated that the claimant's back condition was not disabling as of the alleged onset date but was nonetheless "gradually deteriorating and may have become more extreme prior to the established disability date").

The evidence here reflects that plaintiff's anxiety and depression became more prevalent in 2017, at which point she began regular mental health treatment, but nonetheless experienced a significant disruption in functioning. Tr. 1542-56. Although plaintiff's hearing testimony reflects that she was able to complete four months of beauty school between July and November 2018, her long-standing mental impairments spiraled out of control and had not been stabilized as of January 2019. As discussed in greater detail below, the ALJ did not cite to or rely on any contradictory

---

[2] The record demonstrates that plaintiff became sober in August 2013. See, e.g., Tr. 1425. Plaintiff repeatedly reported to her treatment providers that her mental health symptoms eventually increased after she stopped using drugs and alcohol. See Coaty v. Colvin, 2015 WL 1137189, *4-5 (D. Or. Mar. 11, 2015), aff'd, 673 Fed.Appx. 787 (9th Cir. 2017) ("contemporaneous self-reports to medical providers, as memorialized by their treatment notes, are the most accurate portrayal of functioning" where "there is a remote date last insured").

Page 6 – OPINION AND ORDER

evidence relating to plaintiff's mental functioning during this period and, in fact, an independent review of the record reveals that none exists.

In sum, the ALJ wholly failed to distinguish between these periods and instead exclusively relied on inconsistencies in the record that coincided with plaintiff's period of alcohol abuse and more robust daily activities to discredit her hearing testimony. This is problematic given the remote alleged onset date and the fact that there is no dispute plaintiff suffers from chronic, trauma-based psychological symptoms.[3] The ALJ's evaluation of plaintiff's subject symptom testimony concerning her mental impairments is reversed.

## II.    Third-Party Testimony

Plaintiff contends the ALJ failed to provide a legally sufficient reason, supported by substantial evidence, to reject Ronald M.'s third-party testimony. Lay testimony concerning a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (citation and internal quotation omitted). The ALJ must provide "reasons germane to each witness" in order to reject such testimony. Id. (citation and internal quotation omitted).

In August 2017, Ronald M. completed a Third-Party Adult Function Report in support of plaintiff's disability claim. Tr. 262-69. Ronald M. observed that plaintiff struggled with "low energy," focus, concentration, and memory. Tr. 263-65. In terms of daily activities, he indicated that plaintiff takes care of her dogs and daughter, cooks, cleans, shops, and drives to and from school, appointments, etc. Tr. 263-64. Ronald M. remarked that plaintiff napped during the day and sometimes needed help or encouragement to complete daily tasks. Tr. 263-66. He also stated

---

[3] Indeed, the majority of the nearly 1600-page record before the Court is comprised of records from plaintiff's institutionalization as a minor at the Oregon State Hospital, which was followed by a period of sex work and legal problems.

Page 7 – OPINION AND ORDER

that plaintiff "has very few friends and tries to avoid people and conflict," and does not like to leave the house alone or for long periods because she becomes "overwhelmed," such that she shopped "maybe once a week and . . . as quick as she can." Tr. 265-66.

The ALJ "reviewed" Ronald M.'s lay statements and gave them "significant weight, to the extent they reasonably can justify a restriction to simple tasks with limited social interaction." Tr. 25. As such, plaintiff is correct that the ALJ did not provide any reasoning to reject the portions of Ronald M.'s third-party testimony that are not accounted for the in RFC.

An ALJ's failure to comment upon lay witness testimony is harmless where "the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." Molina, 674 F.3d at 1118-19. Ronald M.'s comments that plaintiff self-isolates, is socially avoidant and gets overwhelmed, and experiences depression which interferes with her energy levels and, by extension, her ability to get through a normal day is consistent with plaintiff's hearing testimony, which the ALJ erred in addressing. As discussed below, Ronald M.'s statements are also consistent with the medical opinion of Dr. Dobles, as well as the treatment notes of Geoffrey Gordon, Psy.D. The ALJ erred in rejecting these aspects of the third-party testimony.

### III. Medical Opinion Evidence

Plaintiff argues the ALJ improperly discredited the opinion of Dr. Dobles. At the time of plaintiff's application, there were three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons supported by substantial evidence. Bayliss, 427 F.3d at 1216 (citation omitted). If a treating or examining doctor's opinion is contradicted by

another doctor's opinion, it may be rejected by specific and legitimate reasons supported by substantial evidence. Id.

In June 2017, Dr. Dobles conducted a one-time Comprehensive Psychological Evaluation of plaintiff that included a clinical interview and objective testing. Tr. 1332-40. Based on this evaluation, Dr. Dobles diagnosed plaintiff with PTSD, "Major Depressive Disorder, moderate, recurrent," and "Panic Disorder." Tr. 1340. In the narrative "summary," Dr. Dobles wrote:

> [Plaintiff] experienced significant sexual, emotional, and physical abuse by parents and step-parents beginning as a young child and continuing for years. [Plaintiff] had significant behavioral problems as a child and was put into inpatient treatment at the age often. She became a heavy drinker at age 13 while living on the streets and being a prostitute. [Plaintiff] continued to be a prostitute, work in a strip club and drink until she was 33 years old. She had a number of run-ins with the law and was arrested numerous times during those years. [Plaintiff] became sober at age 35 and subsequently obtained her G.E.D. and began attending community college . . . She can no longer do many kinds of employment due to chronic pain from Haglund's deformity. Additionally, [plaintiff] has seen an escalation in her PTSD with associated depression and anxiety symptoms since becoming sober which she reported interfere with her ability to interact with people thus making finding and maintaining employment impossible.
>
> [Plaintiff]'s cognitive functioning should not be an impediment to doing many kinds of work. [Plaintiff] reported that she has been successful in community college.
>
> [Plaintiff] described experiencing significant symptoms associated with PTSD, anxiety and depression. These symptoms interfere with her ability to leave her house, to be around other people, and to even get out of bed on some days. [Plaintiff]'s symptoms interfere with her relationships and her ability to find and maintain employment. She had been in therapy a few years ago and is on medications currently. Her medications are being adjusted. Even with treatment, [plaintiff]'s psychological symptoms persisted and even escalated further during the past year. It is likely that she was self-medicating with alcohol throughout her life. As is often seen in individuals when they become sober, she is now experiencing the symptoms that alcohol had been masking. [Plaintiff] is further impacted by watching her 11 year old daughter and realizing what her own life was like at that age.
>
> Given [plaintiff]'s longstanding abuse and trauma beginning as a young child and continuing throughout her life as well as her history of long-term inpatient psychiatric hospitalization at a young age, her psychological symptoms are likely

to be quite significant and to be somewhat resistant to treatment. She had been in psychotherapy for two years in the recent past, and on psychotropic medications currently, but her symptoms persist and even escalated recently. It is highly likely that [plaintiff]'s psychological symptoms would interfere with her ability to find and maintain employment at this time.

Tr. 1339.

In a corresponding Mental Residual Function Capacity Report, Dr. Dobles checked boxes evincing that plaintiff was: moderately impaired in her ability to interact appropriately with the general public, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, and perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and markedly impaired[4] in her ability to work in coordination with or proximity to others without being distracted by them, get along with co-workers and peers without distracting them or exhibiting behavioral extremes, travel in unfamiliar places or use public transportation, and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.[5] Tr. 1342.

---

[4] This form included three rankings: not significantly limited, moderately limited, and markedly limited. Tr. 1341. "Moderately limited" is defined as a "limitation which seriously interferes with the individual's ability to perform the designated activity on a regular and sustained basis," and "markedly limited" is defined as a "limitation which precludes the ability to perform the designated activity on a regular and sustained basis." Id.

[5] Plaintiff also argues that the ALJ erred in regard to the opinion of Scott Alvord, Psy.D., to the extent he "opined that [she] would have mild to moderate difficulty completing a normal workday/workweek without interruptions from a psychiatric condition." Pl.'s Opening Br. 13-14 (doc. 18). The Court finds no error as to this issue. Notably, Dr. Alvord examined plaintiff as part of her application for Social Security benefits; the narrative portion of his report makes clear that plaintiff's "[p]sychiatric conditions [are] mild in general," such that "she will continue to function in an occupational setting." Tr. 1325. While Dr. Alvord then went on to indicate some "mild to moderate" mental difficulties, his opinion cannot reasonably be read as imposing restrictions in excess of the ALJ's RFC. Tr. 22, 24, 1326; see also 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, § 12.00F.2 (agency regulations defining "mild" as "slightly limited" and "moderate" as "fair" functioning).

Page 10 – OPINION AND ORDER

The ALJ did not afford any particular weight to Dr. Dobles' report. Tr. 24-25. The ALJ did, however, acknowledge two marked restrictions assessed by the doctor (i.e., "interacting appropriately or working in coordination with others" and "completing a normal workday or workweek without interruptions from psychological symptoms") but rejected these portions of her opinion as follows:

> More recent evidence obtained at the hearing level alleviates potential concern about the claimant's capacity to complete a normal workday or workweek without interruption from psychological symptoms. Treatment provider Geoffrey Gordon, Pys.D., noted in early 2018 that the claimant exhibited a euthymic mood with normal thought content and process within a clinical setting. The claimant reportedly endorsed a depressed mood while exhibiting a "positive" affect. The claimant acknowledged at that time that depression did not prevent her from pursuing college coursework. While subsequent treatment notes document an episode of acute anxiety, the claimant acknowledged that her symptoms were likely related to an intentional cessation of medication.
>
> The claimant's most recent medical records document an episode where she presented at the emergency room as "agitated" while shouting profanities before leaving without even being treated. She returned the following day complaining of multiple longstanding physical and psychological problems - but she was unable to express her actual motivation for coming to the emergency room. She noted that she had slipped on a rug and hit her head, but intracranial imaging revealed no abnormalities. Her treatment provider ultimately concluded that the claimant's neurological examination was "completely normal" and she presented as "well-appearing" within a clinical setting. Based on these observations, the undersigned declines to impose additional non-exertional limitations beyond those set forth above.

Id. (internal citations omitted).

While contradiction between a doctor's opinion and the record can constitute a legally sufficient reason to reject that opinion, here substantial evidence does not support the ALJ's conclusion. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). Initially, the ALJ overlooked many salient aspects of Dr. Dobles' report that were indicative of additional RFC restrictions. Namely, the ALJ did not discuss or weigh the moderate limitations assessed by Dr. Dobles, or her marked limitations concerning getting along with co-workers and peers without

Page 11 – OPINION AND ORDER

distracting them or exhibiting behavioral extremes and travelling in unfamiliar places or using public transportation. Tr. 24-25, 1342. This "alone constitutes reversible legal error." Trevizo v. Berryhill, 871 F.3d 664, 667 (9th Cir. 2017); see also Anne B. v. Comm'r Soc. Sec. Admin., 2019 WL 6976034, *6-7 (D. Or. Dec. 20, 2019) (reversing the ALJ's decision under analogous circumstances).

Furthermore, the treatment records cited by the ALJ support, rather than detract, from Dr. Dobles' opinion. Namely, in February 2018, Dr. Gordon indicated plaintiff was "in good spirits [because] she has a surgery for her foot scheduled." Tr. 1557. Within the same chart note, plaintiff expressed "plans to finish her schooling and earn a diploma within roughly a year," but also "spoke about the history of sexual abuse and substance abuse in her family" and "described herself as 'crying all the time.'" Id. Thus, Dr. Gordon denoted that plaintiff "endorsed symptoms of depression" that were not improving despite counseling and medication. Id.

The treatment records that both precede and succeed this chart note, at least from 2017 forward, reflect persistent symptoms of depression and anxiety. See, e.g., Tr. 1237-46, 1249-52, 1270, 1272, 1538-39, 1542, 1555-56, 1558-72. In other words, the evidence of record, including from Dr. Gordon, is wholly consistent with Dr. Dobles' conclusion that plaintiff struggled with significant mental impairments that would cause problems with appropriate interactions with others and completing a normal workday or workweek without interruptions from psychological symptoms.

Concerning the ALJ's remaining rationale, the fact that plaintiff presented to the emergency room in November 2018, "quite agitated and shouting profanities," does not undermine Dr. Dobles' report. Tr. 1545-46. Similarly, the fact that plaintiff later returned to the emergency room and was determined not to have anything physically wrong with her is immaterial to the

specific work-related mental limitations assessed by Dr. Dobles, especially in light of the emergency provider's observation that plaintiff was "tearful and labile." Tr. 1547-50. The ALJ therefore committed harmful error in weighing this evidence. See Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (only mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless).[6]

## IV. Remedy

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1176-78 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1090-1100 (9th Cir. 2014). The court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled. Strauss v. Comm'r of Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011); see also Dominguez v. Colvin, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As discussed herein, the ALJ committed harmful legal error by failing to properly weigh plaintiff's and Ronald M.'s testimony concerning her mental symptoms, as well as Dr. Dobles'

---

[6] The Commissioner's argument that any "error was harmless [because Dr. Dobles' opinion was] phrased equivocally" is unpersuasive. Def.'s Resp. Br. 13 (doc. 20). Aside from the fact that this rationale was not invoked by the ALJ, Dr. Dobles' check-box form delineates specific and defined work-related limitations of function. See Marsh v. Colvin, 792 F.3d 1170, 1172 (9th Cir. 2015) ("reviewing court may only affirm agency action on the grounds invoked by the agency") (citation and internal quotations omitted).

Page 13 – OPINION AND ORDER

opinion. The record is nonetheless ambiguous regarding the extent of plaintiff's allegedly disabling impairments, such that it is unclear if/when plaintiff became disabled. On one hand, it is undisputed that plaintiff's mental conditions are chronic and have persisted, in some form since childhood. Even with counseling, plaintiff continued to experience significant depression and anxiety at least as of 2017, despite some waxing and waning of symptoms and medication alterations.

On the other hand, there are significant gaps in plaintiff's mental health treatment record prior to 2017. In addition, plaintiff engaged in activities in excess of her hearing testimony, at least during the earlier part of the adjudication period: she participated in romantic relationships, attended Pilates classes and school part-time (earning excellent grades until the 2016-2017 school year), socialized with greater frequency, volunteered, and engaged in a wide-slate of activities with her daughter, such as shopping at thrift stores and the mall, swimming, playing mini golf, and going to Chuck E. Cheese and the movies. Tr. 1290, 1294, 1305, 1316, 1364, 1366-68, 1419, 1421, 1457, 1459, 1465, 1487. Further, plaintiff testified at the hearing that she performed full-time client intake work in 2014 for approximately four months, which ended for reasons unrelated to her disability. Tr. 42-43.

Accordingly, further proceedings are required to resolve this case. See Treichler, 775 F.3d at 1099 (except in "rare circumstances," the proper remedy upon a finding of harmful error is to remand for further administrative proceedings). Given the remote alleged onset date, coupled with the complex and longstanding nature of plaintiff's mental impairments, consultation with a medical expert would be helpful. Therefore, upon remand, the ALJ must consult a medical expert and, if necessary, reformulate plaintiff's RFC and obtain additional VE testimony.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 20th day of April, 2021.

/s/ Jolie A. Russo<br>
Jolie A. Russo<br>
United States Magistrate Judge